UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BREWSTER,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:18-cv-01515-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Daniel Brewster ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1]     Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2]     The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 7, 8.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed applications for a period of disability and DBI and for SSI on March 20, 2015. AR 273-283.[3] In both applications, Plaintiff alleged disability beginning April 15, 2013. AR 274, 278. Plaintiff's applications were denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an ALJ. AR 182-187, 190-196. ALJ Timothy S. Snelling held a hearing on July 27, 2017, and issued an order denying benefits on January 29, 2018. AR 12-79. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6, 255-258. This appeal followed.

### Relevant Hearing Testimony

The ALJ held a hearing on July 27, 2017, in Fresno, California. Plaintiff appeared in person with his attorney, Robert Ishikawa. Impartial Vocational Expert ("VE") Judith Najarian also appeared. AR 35.

In response to questioning by the ALJ, Plaintiff testified that he was forty-seven years old and had attended three years of college. When asked about his work history, Plaintiff testified that he previously worked as a delivery driver for a pharmacy, a meter reader for a water company, and an in-home support services worker providing care for his parents. When working as a meter reader, Plaintiff drove a vehicle and read water meters. He was the only meter reader for the entire city of Selma, California. Plaintiff's work as an in-home support services worker was part-time and he did not receive any training. Plaintiff's duties while employed as a delivery driver for a pharmacy included driving a vehicle and delivering medical equipment, hospital beds, and medication. When asked by the ALJ, the VE testified that Plaintiff's past work included meter reader and truck driver light. AR 41-49.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When questioned about his impairments, Plaintiff testified that he put on weight after having heart surgery and was now overweight. Plaintiff further testified that he has coronary artery disease, is status post coronary artery bypass grafting times three, and had a stent put in on two occasions. Plaintiff also has diabetes and is on insulin. Additionally, he has hypertension, degenerative disc disease of the lumbar spine with grade one spondylolisthesis, GERD, and a history of peripheral vascular disease. Plaintiff has degenerative arthritis of both hips and underwent a total hip replacement procedure in March of 2015. His doctors prescribe medication for his impairments. AR 49-53.

Plaintiff testified that he does not believe he would be able to return to his past work. Specifically, Plaintiff testified that he was required to lift and carry fifty pounds or more when working as a delivery driver and he believes this is too much for him now. Additionally, Plaintiff's jobs involved a lot of protracted sitting and driving, and he now has difficulty sitting for long periods of time. He currently does not go on family trips because he needs to be close to a restroom and has accidents. AR 53-54.

Plaintiff further testified that he lives with his sister, has never been married, and does not have kids. He moved in with his sister approximately one year before the hearing. In addition to his sister, Plaintiff's brother-in-law and his sister's mother-in-law also live in the home. Plaintiff was previously living in Selma. His parents lived with him before they passed away. Plaintiff receives government assistance in the form of food stamps, general relief, and MediCal. AR 54-56.

In response to questioning by his attorney, Plaintiff testified that he regularly has chest pains and has used nitroglycerin to treat them twice in the past two years. He does not like to use nitroglycerin if he can avoid it. Plaintiff feels short of breath on a daily basis. Walking causes shortness of breath and he can walk less than a block before he must rest. Plaintiff occasionally uses a cane when in pain. His cane was not prescribed by a doctor. Plaintiff estimates that he can stand for five minutes at a time. He experiences pain in his hip and can sit for fifteen or twenty minutes before he must adjust positions. Plaintiff does not lie down during the day because he experiences headaches when lying down. AR 57-62.

Plaintiff testified that his daily activities include watching television or walking around the

house. If he sees something dirty, he will sweep it up but otherwise cannot do many activities. He believes he has improved since his hip surgery because prior to surgery he couldn't tie his shoes or put his pants on. He still has difficulty performing activities that involve bending, leaning over, and balancing but is now able to tie his own shoes and put his pants on while leaning against a wall. Plaintiff does not like receiving assistance with his personal needs, such as showering and shaving. He has slipped due to hip pain while showering before. He does not do housework and can microwave food but cannot prepare full meals. Plaintiff does his own laundry but has difficulty balancing while carrying his laundry basket. AR 63-64.

Plaintiff further testified that he can lift less than twenty pounds. He has difficulty balancing due to pain in his hip and back and because his legs are numb from mid-thigh down. Plaintiff does not know why he experiences numbness but believes it may be due to diabetes or poor circulation. He has not been diagnosed with migraine headaches and does not take any medication or do anything else to relieve his headaches other than waiting for them to go away. Plaintiff also experiences tingling and cramping in his hands and frequently drops things. AR 64-68.

Plaintiff testified that he has not applied for any jobs since his mother passed away in 2014. He previously received state disability benefits at his doctor's recommendation. Beyond government assistance, Plaintiff does not have any source of income. Plaintiff testified that his medications disrupt his stomach, he experiences headaches and dizziness, and he feels tired easily. He believes that his headaches and low energy are caused by his medications. Plaintiff testified that he does not perform any exercise but tries to follow a diet. AR 68-72.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE, Judith Najarian. The VE corrected her prior testimony that Plaintiff's work history included truck driver light and instead testified that his work was classified as health equipment services. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual limited to light work who can lift and carry twenty pounds frequently and ten pounds occasionally, stand and walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day, cannot climb ladders, ropes, or scaffolding, can perform all other postural activities such as climbing ramps or stairs, crouching, crawling, kneeling, and stooping on an occasional basis, and

needs to avoid concentrated exposure to temperature extremes, vibration, dampness, very loud noise, and very bright lights. The VE testified that Plaintiff's past work as health equipment services would be unavailable and his work as a meter reader as performed would be unavailable but work as a meter reader as classified by the Dictionary of Occupational Titles would be available. AR 73-74.

For the second hypothetical, the ALJ asked the VE to assume an individual with chronic fatigue, low energy, and inability to perform exertional activities of standing, walking, and sitting cumulatively no more than seven out of eight hours per day. This individual is between forty-three and forty-seven years old, has three years of college, and has the same past work as Plaintiff. The VE testified that there would be no work available. AR 74-75.

Finally, Plaintiff's attorney asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume an individual who is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, is limited to six hours per day with rest periods of walking and standing, cannot stoop, crouch, or crawl, cannot climb ladders, ropes, or scaffolding, and cannot walk on uneven terrain. The VE testified there would be no work available. AR 75-76.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-28. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and Plaintiff had not engaged in substantial gainful activity since April 15, 2013, the alleged onset date. AR 18. Further, the ALJ identified degenerative arthritis of the hips status post left hip replacement, degenerative disc disease, coronary artery disease status post bypass and stent, hypertension, and diabetes as severe impairments. AR 18-20. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20-21. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except

that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, can stand and walk for six hours in an eight-hour work day, can sit for six hours in an eight-hour workday, cannot climb ladders, ropers or scaffolds, can occasionally perform all other postural activities such as climbing ramps and stairs, crouching, crawling, kneeling, and stooping, and should avoid concentrated exposure to temperature extremes, vibration, dampness, very loud noise, and very bright lights. AR 22-27. With this RFC, the ALJ determined that Plaintiff was capable of performing past work as a meter reader. AR 27. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from April 15, 2013, through the date of the ALJ's decision. AR 27.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[4]

Plaintiff's sole issue on appeal is whether the ALJ improperly rejected the medical opinion of Phillip Kim, M.D. (Doc. No. 20 at 4-9.) Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for giving Dr. Kim's opinion little weight. (*Id.*) The Court disagrees and finds that the ALJ appropriately discounted Dr. Kim's opinion.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

On July 17, 2017, Dr. Kim provided a form medical source statement. AR 742-745. Dr. Kim indicated that he had been seeing Plaintiff monthly for one year. AR 742. He listed Plaintiff's diagnoses as arthropathy of the hip, uncontrolled type 2 diabetes, and obstructive sleep apnea and described Plaintiff's prognosis as "fair—poor." AR 742. Dr. Kim identified Plaintiff's symptoms as pain in the hips and back, fatigue, and dizziness. AR 742. He further described Plaintiff's pain as bilateral chronic lower back and hip pain with position. AR 742. Dr. Kim identified an April 30, 2015 MRI revealing multi-level spondylosis with herniated disc as Plaintiff's most significant clinical finding and objective sign. AR 742. Additionally, Dr. Kim stated that Plaintiff's side effects from his medications included drowsiness, dizziness, fatigue, nausea, and upset stomach. AR 742.

In response to form questions, Dr. Kim indicated that Plaintiff's impairments, symptoms, and limitations "possibly" lasted since the date Plaintiff claims he could no longer work. AR 742. Dr. Kim opined that Plaintiff could occasionally lift up to five pounds, could occasionally lift up to fifteen pounds, and could never lift twenty pounds or more. AR 742. Dr. Kim further opined that Plaintiff could rarely carry up to five pounds and could never carry fifteen pounds or more. AR 743. Dr. Kim did not provide a response to the form question regarding whether Plaintiff could carry ten pounds. AR 743. Additionally, Dr. Kim stated that Plaintiff cannot walk one city block or more without rest or severe pain and cannot walk one block or more on rough or uneven ground. AR 743. He did not provide a response to the form question regarding whether Plaintiff can climb steps without use of a handrail at a reasonable pace. AR 743. Dr. Kim indicated that Plaintiff has problems with balance when ambulating and with stooping, crouching, and bending. AR 743. In response to a question asking him to circle the minutes or hours Plaintiff "must lie down/recline at one time, e.g. before needing to sit up, stand up or walk around[,]" Dr. Kim circled both ten minutes and one hour. AR 743. He further stated that Plaintiff needs to lie down and/or recline during the day due to fatigue and pain for less than one hour in an eight-hour work day. AR 743. Dr. Kim additionally opined that Plaintiff can sit for less than one hour in an eight-hour work day and can stand and walk for less than one hour in an eight-hour work day. AR 743.

Dr. Kim further opined that Plaintiff must take unscheduled breaks requiring him to be away from the work area during an eight-hour work day but did not provide any estimates of how often Plaintiff would need breaks or for how long Plaintiff would need to rest before returning to work. AR 743-744. He also stated that Plaintiff's legs should be elevated with prolonged sitting but did not provide any estimates of how high the legs should be elevated or what percentage of time during an eight-hour work day they would need to be elevated. AR 744. Likewise, Dr. Kim opined that Plaintiff must use a cane, walker, wheel chair, or other assistive device and this will affect Plaintiff's ability to ambulate but did not respond to form questions regarding whether the device was needed for all surfaces, uneven/sloped surfaces, or prolonged ambulation. AR 744. Dr. Kim additionally did not respond to form questions regarding whether Plaintiff has significant limitations with reaching, handling, or fingering. AR 744. Dr. Kim opined that Plaintiff does not have the ability to push and pull arm or leg controls from a sitting position for six or more hours per eight-hour work day and does have the ability to climb stairs but cannot climb ladders, scaffolds, ropes, and ramps. AR 744. Dr. Kim also indicated that Plaintiff's depression and anxiety affect his physical condition and/or contribute to the severity of his symptoms and functional limitations. AR 744. Further, Dr. Kim stated that Plaintiff constantly experiences pain and frequently experiences stress severe enough to interfere with attention and concentration needed to perform simple work tasks. AR 744.

Dr. Kim also opined that Plaintiff's bladder or bowel control, educational and IQ limitations, and need to avoid temperature extremes would affect his ability to work at a regular job on a competitive and sustained basis in an eight-hour work day environment for a continuous period of six months or more. AR 744-745. Dr. Kim estimated that Plaintiff would be off task and unable to perform work and/or away from the work environment due to his limitations more than thirty percent of an eight-hour work day. AR 745. Dr. Kim also estimated Plaintiff would be absent from work one day or less per month as a result of his physical and/or mental impairments and/or his need for ongoing and periodic medical treatment and care. AR 745. Additionally, Dr. Kim estimated that Plaintiff is likely to be unable to complete an eight-hour work day for five days or more per month as a result of his physical and/or mental impairments and/or his need for ongoing and periodic medical treatment and care. AR 745. In response to a form question regarding how efficiently Plaintiff could

9

be expected to perform a job eight hours per day, five days per week, on a sustained basis compared to an average worker, Dr. Kim stated "50% or less." AR 745. Dr. Kim further indicated that he believed Plaintiff can manage benefit payments. AR 745. Finally, Dr. Kim opined that Plaintiff is unable to obtain and retain work in a competitive environment, eight hours per day, five days per week for a continuous period of six months or more. AR 745. Dr. Kim stated that his opinions were based on laboratory reports and other tests as well as x-rays. AR 745.

With respect to Dr. Kim's opinion, the ALJ reasoned as follows:

> "Phillip Kim, M.D., one of the claimant's physicians, opined the claimant could rarely lift less than five pounds, and he needs to lie down for less than one hour in an eight-hour workday (Ex. 19F). Dr. Kim also opined that the claimant could stand and walk for less than one hour in an eight-hour workday, and he could sit for less than one hour in an eight-hour workday (Ex. 19F). Additionally, he opined the claimant would be fifty percent or less as efficient as an average worker, and he would miss five or more days of work per month (Ex. 19F). This opinion is given little weight as it is not supported by a majority of the objective medical evidence. In August of 2016, imaging of the claimant's pelvis showed a left total hip arthroplasty in place with good seating and no evidence of loosening, fractures, or esteomyelitis [sic] (Exs. 18F/5 and 23F/1). In May of 2017, while at Adventist Medical Center of Reedley, the claimant had normal range of motion and strength, and he had no neurologic deficits (Ex. 17F/3). The claimant's heart rate had a regular rate and rhythm with no murmur (Ex. 17F/3).

AR 26.

Dr. Kim's opinions were contradicted by State agency physicians J. Frankel M.D. and G. Bugg, M.D., as well as consultative examiner Samuel Rush, M.D., all of whom opined that Plaintiff's limitations were less severe than those opined by Dr. Kim. AR 112-125, 129-140. As a result, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount these opinions.

In this instance, the ALJ assigned little weight to Dr. Kim's opinion because it was inconsistent with the medical record. An ALJ may discount a treating or examining physician's opinion when it is inconsistent with or unsupported by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ provided specific and legitimate reason for rejecting physician opinion unaccompanied by independent analysis or diagnosis). Accordingly, this was a specific and legitimate reason for discounting Dr. Kim's opinion.

A review of the record reveals that there is substantial evidence supporting the ALJ's finding that the relevant medical evidence is inconsistent with the severity of the limitations set forth in Dr. Kim's opinion. While treatment records reflect some limitations, they do not contain any findings substantiating Dr. Kim's opinion that, as of July 2017, Plaintiff could rarely lift less than five pounds, needed to lie down for less than one hour in an eight-hour work day, could stand and walk for less than one hour in an eight-hour workday, and could sit for less than one hour in an eight-hour work day. AR 472-475; *see also Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Additionally, there is little indication in the record or in Dr. Kim's report itself as to what the bases for these restrictions might be. Dr. Kim refers to an April 30, 2015 MRI as the most significant clinical finding and objective sign. AR 742. However, this MRI revealed only mild multilevel spondylosis at the L4-L5 and L5-S1 levels. AR 593-594. Dr. Kim also stated that his opinion was based on unidentified laboratory reports and x-rays, yet the most recent imaging of Plaintiff's hips noted the left total hip arthroplasty was in place "with good seating of acetabular and femoral components and no evidence of loosening, fractures or osteomyelitis." AR 740, 765. Plaintiff's pelvis and bilateral hips were otherwise normal. AR 740, 765. Furthermore, treatment records from 2015, 2016, and 2017 note that back and musculoskeletal examinations revealed a nontender back with normal alignment and a normal range of motion, normal strength, and normal gait. AR 671-672, 715, 721, 732. Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that Dr. Kim's opinion is inconsistent with the medical record to be supported by substantial evidence.

Relying on *Embrey v. Bowen,* 849 F.2d 418 (9th Cir. 1988) and *Vasquez v. Astrue,* 572 F.3d 586 (9th Cir. 2009), Plaintiff argues that the ALJ's finding did "not achieve the level of specificity that our prior cases have required" and "[c]iting to three different medical record pages out of 390 pages of medical record is not enough to over come [sic] the standard required." (Doc. No. 20 at 5.) However, *Embrey* and *Vasquez* are distinguishable from this case and do not directly discredit the ALJ's decision.

In *Embrey,* three treating physicians and one consulting physician determined that the

11

claimant was disabled but the ALJ rejected all of these opinions, concluding that they were not supported by sufficient objective findings and were contrary to the preponderant conclusions mandated by the objective findings. *Embrey,* 849 F.2d at 421. The ALJ noted that the "duration of the claimant's stress treadmill testing and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work ...." *Id.* The Ninth Circuit held this discussion lacked the required level of specificity and was essentially just a collection of conclusions rather than an analysis of the evidence. *Id.* at 422. In making this finding, the *Embrey* court reasoned that, "where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Id.*

Here, by contrast, the majority of physicians who examined Plaintiff or reviewed his medical records concurred that Plaintiff's limitations were not as severe as those opined by Dr. Kim. Moreover, the ALJ in this case did more than just note the absence of objective medical findings and instead assigned little weight to Dr. Kim's opinion following a thorough and detailed discussion of the objective evidence relating to Plaintiff's conditions. *See* AR 24-26. The ALJ, as Plaintiff notes, cited specifically to certain portions of the medical record in the same paragraph where he assigned Dr. Kim's opinion little weight. In addition, ALJ devoted approximately three pages and ten paragraphs to detailing the specific medical evidence that described Plaintiff's relevant impairments as mild and unremarkable. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency 'explains its decision with 'less than ideal clarity,'' we must uphold it 'if the agency's path may reasonably be discerned.')(citations omitted). Because the ALJ undertook a thorough and detailed discussion of the objective medical evidence and repeatedly indicated how the objective evidence pointed to more mild conditions, the ALJ's ultimate rejection of Dr. Kim's opinion as inconsistent with the lack of objective medical findings is sufficiently specific and distinguishable from *Embrey*.

In *Vasquez,* in turn, the Ninth Circuit considered whether an ALJ's rejection of the claimant's subjective symptom testimony complied with the two-step analysis set forth in *Lingenfelter v. Astrue,* 504 F.3d 1028 (9th Cir. 2007). *Vasquez,* 572 F.3d at 591-592. The *Vasquez* court found that the

12

ALJ's decision did not comport with the requirements of *Lingenfelter* because "the ALJ made no specific findings in support of her conclusion that [the claimant's] claims were not credible, other than the vague allegation that they were 'not consistent with the objective medical evidence.'" *Id.* at 592. This case does not concern application of the two-step analysis for rejection of a claimant's subjective symptom testimony. Moreover, as discussed above, the ALJ did not merely conclude that Dr. Kim's opinion was inconsistent with medical objective evidence and instead supported this statement with sufficiently specific findings.

Plaintiff further argues that the ALJ's citation to the August 2016 imaging of Plaintiff's pelvis and May 2017 treatment notes from Adventist Medical Center in support of the finding that Dr. Kim's opinion was inconsistent with the medical evidence was error because the ALJ "isolate[d] portions of the record" to justify his conclusion. (Doc. No. 20 at 6-7.) Plaintiff cites to various portions of the medical record that Plaintiff apparently contends the ALJ did not consider. (*Id.*)

As an initial matter, the ALJ was not required to specifically address all of the evidence Plaintiff cites in his brief. "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation omitted). Furthermore, Plaintiff's summary of the evidence is consistent with the evidence that the ALJ considered and cited in his opinion. (*See* Doc. No. 20 at 6-7.) AR 19-20. The ALJ expressly acknowledged the medical evidence related to Plaintiff's "markedly asymmetric degenerative changes in the left hip in 2014." (*See* Doc. No. 20 at 6.) AR 24. However, Plaintiff later underwent hip replacement surgery and, as reflected in the ALJ's summary of the medical evidence, Plaintiff's impairments were subsequently frequently described as mild and within normal limits. The ALJ's decision recognizes that Plaintiff has some work limitations, however, he gives little weight to the severely restricted functional assessments provided by Dr. Kim. In reaching his decision, the ALJ weighed the relevant evidence in the record and did not impermissibly give more weight to evidence which supported his conclusion over equally relevant evidence. Notably, Plaintiff does not cite to any objective medical evidence supporting the degree of limitations opined by Dr. Kim even though the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a

disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require").

Plaintiff additionally argues that the ALJ, as a layperson, was not qualified to interpret x-ray results and examinations and therefore his analysis of the evidence was not a specific and legitimate reason to discount Dr. Kim's opinion. (Doc. No. 20 at 7.) However, contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical evidence. *See Lingenfelter*, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]."). Therefore, it was appropriate for the ALJ to weigh the relevant evidence, including x-ray results and notes of examinations, in determining that Dr. Kim's opinion was inconsistent with the medical record.

Finally, Plaintiff argues that the ALJ erred by failing to apply the six factors set forth in 20 C.F.R. § 416.927 in determining the extent to which a treating source opinion should be credited. (Doc. No. 20 at 8.) These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. *See* 20 C.F.R § 404.1527. Plaintiff relies on *Trevizo v. Berryhill,* 871 F.3d 664 (9th Cir. 2017) in support of his contention that the ALJ's failure to apply these factors is legal error.[5] However, while the ALJ must consider those factors, he is not required to expressly discuss each one. *See Kelly v. Berryhill*, 732 Fed. Appx. 558, 562-63 n.4 (9th Cir. May 1, 2018) ("[T]he ALJ is not

---

[5] Although Plaintiff's brief cites to *Trevizo v. Berryhill,* 862 F.3d 987 (9th Cir. 2017), this opinion was amended and superseded on denial of rehearing by *Trevizo v. Berryhill,* 871 F.3d 664 (9th Cir. 2017).

14

required to make an express statement that []he considered all the factors outlined in 20 C.F.R. § 404.1527(c)."); *Harris v. Colvin,* 584 Fed. Appx. 526, 528 (9th Cir. 2014) ("The agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)."); Social Security Ruling 06-03p, 2006 WL 2329929, at *5 (Aug. 9, 2006) ("Not every factor weighing opinion evidence will apply in every case."). In this case, the ALJ expressly stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. AR 22. The ALJ also discussed Dr. Kim's treating relationship as well as the supportability of Dr. Kim's opinion and its consistency with the record. AR 26. Further, unlike in *Trevizo,* where the ALJ's "outright rejection" of the treating physician's opinion constituted "reversible legal error," here the ALJ only assigned little weight to the severe restrictions reflected in Dr. Kim's opinion. AR 26. For example, Dr. Kim's findings that Plaintiff is unable to climb ladders, ropes, or scaffolds are reflected in the RFC. Plaintiff's challenge on this ground accordingly fails.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Daniel Brewster.

IT IS SO ORDERED.

Dated: __March 27, 2020__   /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE